CLARENCE NELSON v. WINKLEY ARTIFICIAL LIMB
COMPANY AND ANOTHER.[1]

March 23, 1934.

No. 29,660.

*Edward H. Bull, Robert L. MacPhail,* and *Sweet, Johnson &
Sands,* for relators.

*J. J. Gallagher, D. S. Krause, R. B. Hasselquist, Tautges, Eichelzer & Tautges,* and *K. A. Campbell,* for respondent.

*STONE, Justice.*

*Certiorari* to the industrial commission to review an award of compensation.

■ Mr. Nelson, the employe, then aged 15, suffered the amputation of both legs above the knees as the result of a railroad accident in 1917. In 1929, having mastered the use of artificial limbs, he began work as a traveling salesman for relator Winkley Artificial Limb Company. He testified that October 21, 1931, in the course of his employment, his car broke down on the highway and

[1]Reported in 253 N. W. 765.

that he then contracted a cold. Again, October 28, while trying to get his machine out of the ditch into which it had skidded, he not only suffered a severe exposure in a cold rain, but also, he claims, while trying to jack up the car, slipped, strained his hip, and, at the same time, suffered a marked abrasion of the stump of his right leg. He says that later that evening, when he went to bed, he first noticed that the stump was "skinned." Illness did not interfere with his work until November 4. Then at Hibbing he developed a soreness of the throat which marked the beginning of the disability in question. His tonsils infected, there speedily developed a general systemic staphylococcus infection with multiple abcesses and finally a marked arthritic condition of the right hip joint.

Sharply defined is the fact issue whether Nelson suffered accidental injury within the meaning of the compensation law. There is medical testimony, beginning with his condition at Hibbing on November 4, which persuasively opposes his own explicit testimony concerning the abrasion. Believed, as the latter was, by the industrial commission, and aided by medical testimony on his behalf, it reasonably supports the conclusion reached by the commission that an accidental injury was suffered by Nelson in the course of his employment which was the cause of the disability in question.

The decision of the commission was reached against a forceful dissent by commissioner Debel. The two memoranda, one written by him and the other by the two commissioners joining in the decision, have stated the facts so fully and put them in such clear definition that our work of review has been much aided thereby. While the view of the dissenting commissioner is persuasive on the facts, neither it nor the argument here has shown us clear ground upon which to say that the decision is not reasonably supported by evidence for the employe and permissible inferences therefrom.

■ As to amount, the award rests upon a finding that the employe "was receiving as wages the sum of $40 per week" when he was injured. Concededly, he was being paid at the flat rate of $25 weekly, plus hotel bills, inclusive of meals, and five cents per mile for the use of his Chevrolet automobile. It is declared by 1 Mason Minn. St. 1927, § 4325:

"Where board or other allowances of any character except gratuities are made to an employe in addition to wages as a part of the wage contract, they shall be deemed a part of his earnings, and computed at the value thereof to the employe."

We assume without deciding that relators are correct in their argument that the mileage allowance should not be deemed "part of his earnings," except for the excess, if any, over the actual cost of maintaining and operating the car. But the employe was being paid for salary, hotel bills, meals, and car mileage from $60 to $65 weekly. So even without showing that the mileage allowance resulted in profit to the employe, certainly no error appears in fixing his weekly wage at $40.

The award is affirmed with an allowance of $100 to the employe-respondent for his attorney's fees in this court.